UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KALYNN FIELDS,<br><br>Defendant. | CRIMINAL NO.  25-CR-43 |

## UNITED STATES' SENTENCING MEMORANDUM

Kalynn Fields ("Fields") used fraudulent and misleading applications to obtain an Economic Injury Disaster Loan ("EIDL") and a Payment Protection Program ("PPP") loan during the COVID-19 pandemic. As a result of Fields' fraudulent and misleading applications, Fields, a police officer with the Metropolitan Police Department ("MPD"), obtained a $15,000 EIDL from the Small Business Association ("SBA") and a $20,000.00 PPP loan from Northwest Federal Credit Union ("NWFCU"). Essentially, Fields fabricated a business and obtained $35,000 by falsely claiming she needed them for non-existent business expenses, intending all the while to obtain the money for her personal use and benefit. However, once caught, despite initial denials, Fields subsequently sought the help of counsel and promptly took responsibility for her conduct through her pre-indictment plea. This spared the Government the need to seek a Grand Jury indictment and prepare for trial. Additionally, Fields has taken prompt steps towards paying restitution. For these reasons, and those discussed in more detail below, Fields should receive a sentence of two-months imprisonment. This sentence is at the low-end of the applicable United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") range, which is 0-6 months at offense level 7 and criminal history category I.

1

## I. PROCEDURAL BACKGROUND

On February 10, 2025, the Government filed a one-count Information charging Fields with Wire Fraud, in violation of 18 USC § 1343. On March 6, 2025, Fields entered a guilty plea to the Information as part of a plea agreement with the United States. Sentencing has been set for June 20, 2025.

## II. FACTUAL BACKGROUND

### a. The Defendant

Fields was employed by the MPD, the primary law enforcement agency for the District of Columbia. MPD's headquarters are located in Washington, D.C. Fields was assigned as a Patrol Officer for the Seventh District, which is located in the Southeast quadrant of Washington, D.C. As a Patrol Officer, she had various responsibilities, including responding to service calls, conducting traffic stops, detentions, and arrests, and reporting incidents and offenses that occur in her police service area. There is a policy that requires all MPD employees to report all "outside employment" to MPD that could conflict with the execution of their duties. This required MPD employees to fill out form P.D. 180, "Request for Approval to Engage in Outside Employment." MPD employees are also required to report sole proprietorships. Fields was aware of the need to file the appropriate outside employment forms with the MPD.

### b. The Criminal Conduct

#### i. Background

To facilitate her criminal conduct, on April 13, 2021, the Defendant opened a new bank account, ending in -8199, at Northwest Federal Credit Union ("NWFCU") in her own name. On June 7, 2021, the Defendant registered a business in her own name, Kalynn Fields ("Kalynn Fields"), in Maryland. On May 2, 2022, Fields registered Wheels Enterprise LLC ("Wheels") in

Maryland. The Defendant never reported Wheels or "Kalynn Fields" to MPD as she knew she was required to do.

### ii. The Fraudulent PPP Loan

Fields authorized a friend to file one PPP loan application on April 13, 2020, seeking $20,000 on behalf of Kalynn Fields, a sole proprietorship she claimed to operate. This application contained materially false statements, including that Kalynn Fields was in the transportation industry, the business had a $8,000 monthly payroll, the loan was "necessary to support the ongoing operations" of the business, and the funds would be "used only to retain workers and to maintain payroll or other payments" specifically related to the business. As part of the loan application process, Fields affirmed that her business had been in operation in February 2020. Based on her representations, Fields received a $20,000 PPP loan. In fact, Fields did not operate a business (as a sole proprietor or otherwise) and never intended to use the loan funds for a legitimate business purpose.

Fields subsequently submitted a Form 3508S, "PPP Loan Forgiveness Application," on behalf of Kalynn Fields for the $20,000.00 PPP loan. As part of that loan forgiveness application, which listed the trade name of the business as Wheels Enterprise, Fields indicated her business was "General Freight Trucking, Long Distance." However, Fields had still not started a business, nor did she have a freight trucking license or the necessary insurance to run such a business. She also affirmed that she had complied with all requirements of the PPP program, including the eligible uses of PPP loan proceeds. In fact, Fields knew she had not complied with the PPP program rules and misspent the PPP funds on personal expenses she received as part of her fraudulent PPP loan application.

### iii. The Fraudulent EIDL

The $20,000 proved to be insufficient for Fields. Five months after receiving that loan, she had her friend submit another fraudulent loan application on behalf of Kalynn Fields. This time, they submitted a fraudulent EIDL application, which contained numerous materially false statements, including that the business—which was listed in this application as providing "Miscellaneous Services"—was established in March 2019 and that it had generated meaningful gross revenues and monthly gross receipts in 2019 and 2020.

When Field's initial EIDL application was declined by the SBA because Fields did not meet the credit score threshold, Fields had her friend upload supplemental documents to the SBA application portal, including a fabricated 2019 IRS Schedule C (Profit or Loss from Business).

On September 22, 2021, after Fields authorized her friend to provide the SBA with the false and misleading supplemental documents, the SBA approved the Defendant's EIDL application. As a result of Field's materially false application and fraudulent supporting documents, on September 28, 2021, the SBA deposited an initial payment of $5,000 to the Defendant's NWFCU account ending in -8199, and on September 29, 2021, the SBA deposited an additional $10,000 into the same account. This brought the total balance in the Defendant's account to $15,005.34. Fields applied for and received the EIDL despite never intending to use the loan funds for a legitimate business purpose.

### iv. The Fraudulent Use of the Loan Proceeds

After receiving the PPP loan and EIDL funds, Fields quickly depleted the PPP loan and EIDL funds deposited into her NWFCU bank account ending in -8199 through various money transfers and payments for goods and services, in the District of Columbia and elsewhere, that had

4

no legitimate business purpose. For example, Fields used the funds to pay for a variety of personal expenses, including meals at restaurants, alcohol, and shoes.

### c. Other Relevant Conduct

On November 21, 2024, federal law enforcement agents recorded a non-custodial interview with Fields. During that interview, the agents asked Fields about checks she had written to certain individuals after receiving the PPP and EIDL loans. Fields responded definitively that she did not remember those checks (Interview Rec. I at 15:30-16:12). Shortly thereafter, however, she began to explain that she wrote the checks because one payee (a friend) had helped her obtain funding for a business and the others were helping her start the business.

Fields earned good grades in college, obtained a bachelor's degree, and was working as a police officer. She was 30 years old at the time. Yet she claimed during the interview that she believed her friend that there was "free money" for starting a business (Interview Rec. I at 17:01-17:18), and that she allowed her friend to digitally sign documents for her even though Fields had not seen the paperwork or knew what her friend was signing (Interview Rec. II at 18:00-18:46).

### III. THE APPLICABLE SENTENCING GUIDELINES

To determine an appropriate sentence, the Court must first accurately calculate each Defendant's advisory Sentencing Guidelines Range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Probation and the Government agree that Fields' advisory Sentencing Guidelines Calculation is:

| Guideline | Description | Offense Level |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense Level | +7 |
| § 2B1.1(b)(1)(C) | Loss Amount: $35,000 | +4 |
| § 3E1.1(a) | Acceptance of Responsibility | -2 |
| § 4C1.1 | Adjustment for Certain Zero-Point Offenders | -2 |
| **Total** | | 7 |

In accordance with the above, Fields' Estimated Offense Level is 7. Fields' lack of criminal record places her in Criminal History Category I. The resulting advisory Guidelines range is 0 to 6 months.

### IV. The Appropriate Sentence Considering the Factors Set Forth in Section 3553(a)

To determine an appropriate sentence, after the Court accurately calculates each Defendant's advisory Guidelines range, it should consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. These factors include the nature and circumstances of the offense, the history and characteristics of the Defendant, and the need for the sentence to promote respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3552(a). The United States submits that considering these factors, a sentence at the low end of the applicable Guidelines Range is appropriate and not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), which is 0-6 months at offense level 7 and criminal history category I. The United States also submits that restitution in the total amount of $35,000 and the imposition of a fine with the applicable Guidelines range is appropriate.

#### a. Nature and Circumstances

First, the nature and circumstance of the offense support a sentence of two-months imprisonment. Although Fields, an MPD officer whose job required her to uphold the law, violated the public trust and such conduct must be taken seriously, Fields took immediate steps to remedy her wrongs. For example, shortly after Fields became aware of the Government's investigation, she sought out counsel, expressed her desire to accept responsibility for her criminal conduct, and took steps to pay back the money she received because of her fraudulent and misleading loan applications. Thus, the nature and circumstances of the offense do not warrant a variance from the applicable guidelines and support a two-months compliant sentence.

b. **History and Characteristics**

The second factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant. The portrait set forth in the Presentence Report is not one that excuses Fields' behavior, nor provides a reason to depart from the guidelines.

c. **The Need to Promote Respect for the Law and Provide Just Punishment and Adequate Deterrence**

Fields' sentence must also reflect the seriousness of the offense to promote rule of law and provide just punishment and adequate deterrence. These factors also support a sentence of two-months imprisonment. Fields appears unlikely to reoffend. She took responsibility for her actions without delay and requested the Government seek a restitution order from this Court as soon as possible, demonstrating her desire to right her wrongs and a respect for the rule of law. Even so, it cannot be neglected that Fields was an MPD officer who swore to uphold the law. Instead, she committed crimes she knew were wrong, violating the important trust placed in her by the public. A significant sentence will provide the necessary general deterrence to other police officers who might be inclined to violate the public trust and commit similar fraudulent offenses.

**V.    FORFEITURE, RESTITUTION AND SPECIAL ASSESSMENT**

The Government is not seeking forfeiture but is seeking restitution. The Parties agree that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies under 18 U.S.C. § 3663A. Here, as described above, the loss to the Government was $35,000. On June 10, 2025, following a Consent Motion of Presentence Payment, this Court ordered the Clerk of Court to accept a $4,000 pre-sentence payment toward the criminal monetary penalties imposed against Fields. Following this payment, Fields will still owe restitution in the amount of $31,000. Additionally, in this case, a special assessment of $100 is mandatory. *See* 18 U.S.C. § 3013(a)(2)(A).

## VI.     FINE

In addition, the parties agree that pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines Level 7, the estimated applicable fine range is $1,000 to $9,500. In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). Given Fields' present financial status, and restitution obligation, it appears Fields' does not have the ability to pay a fine and the Government is not asking the Court to impose a fine.

## VII.     CONCLUSION

Fields' conduct must not be taken lightly. Our government cannot function properly when the actions of Government officials, and those in trusted law enforcement positions, violate the public trust by breaking the very law they swear to uphold for their own personal gain. Fields, however, admitted her wrongdoing and took responsibility for her actions. The Government asks the Court to impose a sentence of two-months imprisonment.

Respectfully submitted,

JEANINE FERRIS PIRRO
United State Attorney

By:     /s/ *Rebecca G. Ross*
Rebecca Ross (N.Y. BAR #5590666)
Assistant United States Attorney
601 D Street N.W.
Washington, D.C.  20530
Rebecca.Ross2@usdoj.gov
(202) 815-8982

## CERTIFICATE OF SERVICE

Rebecca G. Ross, attorney for the United States, hereby certifies that a true and correct copy of this memorandum has been electronically filed and accordingly served upon attorney for the Defendant.

*/s/ Rebecca G. Ross*
Rebecca G. Ross